Gaston, J.
 

 It seems to us that upon one view of the case, which was properly submitted to the consideration of the jury, the instructions of the court were erroneous. His Honor having left it Rto them as a question of fact, whether the witness Skinner, at the public sale made by the Executor, bid off the growing crop for
 
 him,
 
 instructed them, that, if they should so find, the executor was nevertheless not, in law, chargeable to the creditors of his testator for the amount which that crop actually produced in his hands, but only for the sum at which it had been so bid off. In support of this position it has been argued by the defendant’s counsel, that, by the contract of sale, the
 
 legal
 
 title in the crop passed to the purchaser, and was wholly divested out of the defendant as executor, and that, upon the re-transfer, it vested in the defendant again, but in his individual character; that the alleged trust under which the purchaser bought could not be noticed in a Court of Law, as invalidating the sale, but was cognizable only in a Court of Equity, which would not allow the executor to derive gain therefrom ; that these principles were distinctly recognized in the case of
 
 Hoskins
 
 v
 
 Wilson,
 
 (3 Dev. & Bat. 243) where there was a transfer from the vendor and re-transfer from the vendee by deed, and that the same principles must apply in cases of transfer and re-transfer by parol, if the nature of the property permitted it to pass without deed. We do not think that the question to be decided necessarily involves the enquiry, whether, at law, the title of the growing corn passed to the
 
 *519
 
 supposed purchaser, and was-immediately thereafter re-vested in the defendant, or whether, notwithstanding such appa-^ rent or pretended sale and re-sale, it continued in the defendant until his final disposition of the corn. The question to be decided is, for what sum is the defendant chargeable to the creditors of his testator because of that crop of corn. Is it what he actually got, or only the price at which his agent bid it off? Assets in the hands of an executor or administrator are thus defined : “ All those goods and chattels, actions and commodities, which were of the deceased-in right of action or possession as his own, and so continued to the time of his death, and which after his death the exec-j utor or administrator doth get into his hands as belonging! to him in the right of his executorship or administratorship,'/ and all such things as do come t-o the executor or ad-minis-] trator in lieu or by reason of that, and nothing else shall be! said to be assets in the hands of the executor or administrator to make him chargeable to a creditor or legatee.” — » Touchstone 496,
 
 2
 
 Will’s on Ex’rs 1012. Now the net price, which the defendant obtained for the corn, when ultimately disposed of by him, was obtained in lieu and by reason of goods of the testator which had come to. him in his office of executor, and for this price he ought to be charged unless he had theretofore
 
 rightfully
 
 disposed thereof at a less price. Nothing is better settled with us than that ani executor cannot buy at his own sale. It would be a mise-* rabie evasion of the law, if he could rightfully do tbisj through the intervention of an agent. What is prohibited^ directly cannot be sanctioned,-if done indirectly. Suppose, therefore, the sale or pretended sale to Skinner did pass the legal title, yet if in this transaction he were the agent of the executor and bought for the executor, it was a wrongful disposition, and the price is not the measure of the value of the corn wrongfully sold. An executor cannot be allowed to speculate upon and make profits out of the estate of his testator. Whenever it is seen that he has made profits there-out, these profits, as well at Law as in Equity, are assets for the satisfaction of creditors and legatees. So if he buys in
 
 *520
 
 a debt of his testator for less than its nominal amount, he shall be allowed only what he paid therefor. And it will make no difference whether lie buys in his own name or , , .
 
 J
 
 through the intervention of an agent.
 

 If the case of
 
 Hoskins
 
 v
 
 Wilson
 
 has been regarded as authority, for the position that a transfer by an executor to an agent, and a re-transfer by the agent to the executor, changes the character of the executor’s ownership, that he now holds absolutely what he before held
 
 in
 
 trust, we must be permitted to say our decision has been misunderstood.— There is.a great difference between the legal effect of sales, conveyances and other dispositions, when made by trustees, who are at law the owners of the property, and when made by those who, without having an estate therein at law, are entrusted with certain powers in relation thereto. In the case referred to, the trustee, whose conduct was arraigned, was of the latter description. Upon the petition of several tenants in common of certain slaves, an order wais made by a competent court for the sale. The sale was made, reported to the court, and confirmed, and a conveyance in due form executed to the reported purchaser by the petitioners. Some of these petitioners were under age, and it was alleged that the purchaser bought in the slaves for the guardian of the infants, and, shortly after taking liis conveyance, conveyed ^them to the guardian. We held, that, although the sale 'might have been set aside under the rule which prevails in Equity, that no trustee or agent of the parties to a sale shall be allowed to purchase for himself, yet the legal title of
 
 ihe petitioners
 
 passed under their conveyance to the reported purchaser, and by his conveyance to the guardian of the infant petitioners. So in the case there quoted of
 
 Jackson v
 
 Walsh, 14 Johns, 407, there was a sale of
 
 land
 
 made by an executor, and it was objected that under his deed the purchaser could not take the legal estate, because the purchase was made in trust for the executor. Here the vendor was not owne.r, and the estate did not pass from him. His deed operated at law as an appointment, and the vendee as the appointee under it took the estate from the devisor. The
 
 *521
 
 objection that the estate did not pass under this
 
 at law
 
 was overruled, but it was distinctly admitted that a Court of Equity would have readily listened to an application from persons interested in and aggrieved by this transaction, had it been made in due season, and have set aside the sale as one in violation of the settled law of that court. But an Executor holds the goods, which were of his testator as the legal owner, and although the law gives him this dominion for the benefit of others, yet a sale of these goods by him is made in the legal character of owner. Now no man can sell his own property to himself, and whenever an alleged sale, however disguised, is perceived to be of this character, it must be pronounced by every court, which can look beyond the forms of the transaction, to be a nullity. — . Whether there may not be cases in which, because of the peculiar operation of the. solemnities accompanying a pretended transfer from and re-transfer to an executor, a Court of law may be incompetent to ascertain the truth of the transaction, we forbear to say until a necessity for a determination of that question shall arise. But in the case under consideration, we have no difficulty in saying that there was no impediment of this character. If no consideration passed or was intended to pass from the bidder to the executor, there was no contract of sale. The transaction was in fact a sham, a pretended sale, and the law will so pronounce it. The property remained what it had been, the property of the executor.
 

 The judgment must be reversed and a new trial awarded.
 

 Per Curiam. Judgment reversed and new trial awarded.